IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

PATRICIA M. JENSEN,

               Plaintiff,

                                    Case No. 6:11-cv-06298-ST

     v.

                                    OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security Administration,

                       Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Patricia M. Jensen ("Jensen"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-33. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). All parties have

consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636©.  For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

## ADMINISTRATIVE HISTORY

Jensen protectively filed for DIB and SSI in September 2007.  Tr. 135-54.[1]  In her applications, Jensen alleges a disability onset date of April 23, 2003.[2]  Tr. 145, 149.   Her applications were denied both initially and on reconsideration.  Tr. 59-81.  Jensen then requested a hearing before an Administrative Law Judge ("ALJ").  Tr. 85-86.  On April 9, 2010, ALJ Charles W. Kunderer held a hearing at which Jensen was represented and testified, as did vocational expert ("VE") Patricia Riggle.  Tr. 31-54.  The ALJ issued a decision on June 14, 2012, finding Jensen not disabled.  Tr. 11-22.  On July 29, 2011, the Appeals Council denied Jensen's request for review, making ALJ Kunderer's decision the Commissioner's final decision.  Tr. 1-3; 20 C.F.R. §§ 404.981, 416.1481.

## BACKGROUND

Jensen was born in 1957.  Tr. 145, 149.  She completed high school (Tr. 35) and has past relevant work as a cashier-customer service clerk, custodian, and teacher's aide.  Tr. 51, 189.  Jensen alleges that she became unable to work on April 23, 2003, due to an on-the-job injury and spousal abuse, which caused headaches, a memory problem, anxiety, depression, post-traumatic stress disorder ("PTSD"), and leg, hip, arm, back, and neck pain.  Tr. 37-40, 187-88.

---

[1]  Citations are to the page(s) indicated in the official transcript of record filed on February 14, 2012 (docket #13).

[2]  Jensen was last insured for DIB purposes through December 31, 2008.  Tr.13.  Therefore, to recover DIB, Jensen must establish that she suffered from a disability prior to that date.  Regardless of the onset date, Jensen is not eligible for DIB for any month preceding August 2006, 12 months before her application.  20 C.F.R. § 404.621. However, SSI benefits are not dependent upon insured status.

## DISABILITY ANALYSIS

In construing an initial disability determination, the Commissioner engages in a sequential process encompassing between one and five steps.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).  Absent a severe impairment, the claimant is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments.  20 C.F.R. §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in

the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC. *Id.* If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## ALJ'S FINDINGS

At step one, the ALJ found that Jensen has not engaged in any substantial gainful activity since the alleged onset date of her disability, April 23, 2003. Tr. 13. At step two, the ALJ determined that Jensen suffers from the severe impairments of "stable 3mm ICA [internal carotid artery] aneurysm, headaches, asthma, degenerative disc disease of the cervical and lumbar spine, and depressive disorder." *Id.* The ALJ, however, did not address any of Jensen's other alleged impairments at step two. *Id.* At step three, the ALJ found that Jensen's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 13-15.

Because Jensen did not establish disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work. The ALJ resolved that Jensen had the RFC to perform light work, except that she must "avoid moderate exposure to noxious gases, fumes, and chemicals." Tr. 15. At step four, the ALJ found that Jensen is able to perform her past relevant work of "cashier-customer service." Tr. 21. Accordingly, the ALJ concluded that Jensen was not disabled at any time between April 23, 2003, and the date of the decision on June 14, 2010.[3] *Id.*

---

[3] As stipulated at the hearing, Jensen was seeking a closed period of disability from April 23, 2003, through September 20, 2008, because she was no longer disabled as of the latter date. Tr. 34.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Lingenfelter*, 504 F.3d at 1035; *Batson*, 359 F.3d at 1193.

## DISCUSSION

Jensen alleges that the ALJ erred by: (1) determining that her mental impairments of anxiety and PTSD were not severe at step two; (2) improperly assessing her subjective symptom testimony; (3) rejecting the opinions of several treating physicians; and (4) failing to account for all of her impairments in the RFC assessment.

## I.    Step Two Findings

Jensen asserts that the ALJ failed to include her PTSD and anxiety as a severe impairments at step two. At step two, the ALJ determines whether the claimant has a medically determinable severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520, 416.920. An impairment is "not severe" if it does not significantly limit the plaintiff's ability to do basic work activities. 20 C.F.R. §§ 416.921, 404.1521; *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir.

2005).  The step two threshold is low and described by the Ninth Circuit as a "de minimus screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

The medical record contains multiple references to Jensen's mental impairments.  However, her medical providers differ in their diagnoses.  *See, e.g.*, Tr. 1205 (diagnosis of depression); Tr. 1087 (diagnosis of depression, anxiety, and PTSD); Tr. 1199 (diagnosis of depression and anxiety).  In resolving this ambiguity in the record, the ALJ determined that Jensen's depression was severe at step two.  Tr. 13.  This is consistent with the description at the hearing by Jensen's attorney of her mental impairments as "anxiety and PTSD and *resulting* depression."  Tr. 34 (emphasis added).

In any event, any error in designating specific impairments as severe did not prejudice Jensen because the ALJ resolved step two in her favor.  *Gray v. Comm'r Soc. Sec. Admin.*, 365 Fed. Appx. 60, 61 (9th Cir. 2010) (rejecting argument that the ALJ erred at step two by determining certain impairments were nonsevere since "the ALJ concluded that [claimant's] other medial problems were severe impairments"); *Mondragon v. Astrue*, 364 Fed. Appx. 346, 348 (9th Cir. 2010) ("Any alleged error at step two was harmless because step two was decided in [claimant]'s favor with regard to other ailments.").  In addition, the ALJ performed the requisite psychiatric review technique at step three.  Therefore, the ALJ did not commit any reversible error at step two.

## II.  Credibility

Jensen argues that the ALJ failed to provide a clear and convincing reason for rejecting her subjective symptom testimony regarding the extent of her impairments.  When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (citation omitted).

A general assertion that plaintiff is not credible is insufficient; the ALJ "must state which [subjective symptom] testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In this case, the ALJ determined that Jensen's "medically determinable impairments could reasonably be expected to have cause[d] some [of] the alleged symptoms; however, [her] statements regarding the intensity persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the" RFC. Tr. 16. That determination was based on the lack of supporting objective medical evidence both as to her "alleged physical limitations" and "alleged mental limitations." Tr. 17, 19.

In discussing the medical evidence, the ALJ noted several inconsistencies in her statements to medical providers about the extent of her symptoms. Tr. 19-20. Inconsistencies in a claimant's testimony, including those between the medical evidence and the alleged symptoms, can serve as a clear and convincing reason for discrediting it. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ cited Jensen's report to Charlotte Lee-Higgins, Ph.d., that she had "bulging and herniated discs in her neck." Tr. 20, 1384. Based on this self-report of "actual physical injuries," Dr. Lee-Higgins determined that Jensen did not suffer from a somatization disorder. Tr. 1384. As the ALJ correctly noted, however, the objective medical evidence contravenes Jensen's statement regarding "bulging and herniated discs." Tr. 20. In fact, with the exception of minimal degenerative changes, diagnostic images taken of Jensen's back and neck have all been normal. *See, e.g.*, Tr. 843-47, 1093, 1095-96, 1103, 1123, 1279-82, 1287-88. However, as reported by Edwin R. Christensen, Ph.d., who performed a psychological evaluation on August 3, 2005, Jensen "was very over-elaborative [about] all of her problems" and evasive in answering his questions. Tr. 19, 1147-52. Although Jensen's statement to Dr. Lee-Higgins could be characterized as an elaboration, it nonetheless is inconsistent with the objective medical evidence.

The ALJ also determined that Jensen was not credible because she had significant gaps in her medical treatment record. He noted that Jensen sought "little care" for her physical impairments from October 2005 through August 2007 and that "there [was] a fairly significant gap in mental health treatment from 2006 until 2009." Tr. 18-19. Failure to seek medical treatment is a clear and convincing reason to reject a claimant's subjective statements. *Burch*, 400 F.3d at 681; *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989); *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996).

The record supports the ALJ's conclusion. In 2006, Jensen sought treatment five times for physical maladies: once to receive a refill of Percocet to treat her knee pain (Tr. 1250-51), three times for dizziness (Tr. 1257, 1261, 1263), and once for a stomach ache (Tr. 1253-54). From January 2007 through July 2007, plaintiff sought treatment four times: once for difficulty breathing (Tr. 1289), once for multiple contusions and bruises caused by an assault (Tr. 1295), once for

diarrhea (Tr. 1299), and once for asthma, toe pain, and bruises caused by spousal abuse (Tr. 1241-42).  Thus, with the exception of seeking Percocet for her knee pain, Jensen did not receive medical treatment for any of her allegedly disabling physical conditions during this time.  Furthermore, aside from being intermittent, the only impairments for which Jensen received treatment over a nearly two-year period were transient, such that they do not meet the durational requirements for disability.  *See* 20 C.F.R. §§ 404.1509, 416.909; *see also Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  This failure to seek treatment belies Jensen's statements that severe headaches, neck, back, and leg pain rendered her unable to work.  *See* Tr. 43-45.

Moreover, while Jensen does address this issue, the record reveals that she also did not seek any psychiatric treatment for over two years despite her allegedly disabling mental impairments.

The ALJ identified two clear and convincing reasons, supported by substantial and specific evidence in the record, that undermine Jensen's claims that her impairments prevented her from working.  Thus, this Court need not discuss the other reasons provided.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).  Accordingly, the ALJ did not err in his credibility analysis.

### III.  **Medical Opinion Evidence**

Jensen contends that the ALJ neglected to address the opinions of Dennis Hamp, D.O., and Alan Brown, M.D., and, therefore, improperly rejected them.  In addition, Jensen argues that the ALJ failed to provide a clear and convincing reason to reject the opinion of Jay Spector, M.D.

Social security cases involve three types of medical opinions, namely those from treating, examining, and non-examining doctors.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and

convincing reasons for doing so.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing

*Lester*, 81 F.3d at 830-31).  However, if a treating or examining doctor's opinion is contradicted by

another doctor's opinion, it may be rejected by specific and legitimate reasons.  *Id.*

### A.    Dr. Hamp

Dr. Hamp was Jensen's treating physician from 2000 through 2005.  Between May and

August of 2004, Dr. Hamp completed two "Workplace Functional Assessment Report[s]" and a

"Form 20-Physical Impairment/Disability Report" on behalf of Jensen's application for Medicaid.

Tr. 1031-40.  In the "Physical Impairment/Disability Report," Dr. Hamp remarked that Jensen could

lift no more than five pounds and should avoid bending, stooping, pushing, or pulling.  Tr. 1038.

In the first "Workplace Functional Assessment Report," Dr. Hamp opined that Jensen was able to

participate in one hour per day or three hours per week of work related activity.  Tr. 1040.  Three

months later in the second "Workplace Functional Assessment Report," Dr. Hamp reported that

Jensen was not able to participate in any work related activities.  Tr. 1028.

The ALJ must explain "why significant probative evidence has been rejected."  *Vincent v.

Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation and internal quotations omitted).  Because

Dr. Hamp was Jensen's treating physician over a five-year period, his opinion is controlling weight

if it was consistent with the other evidence and well-supported by medically acceptable clinical and

laboratory diagnostic techniques.  *See McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011)

(citing 20 C.F.R. § 404.1527).

The ALJ did not discuss Dr. Hamp or his 2004 reports.  Contrary to the Commissioner's

assertion, the evidence from Dr. Hamp was both significant and probative.  His reports indicate that

Jensen's condition was static and not expected to improve.  Tr. 1028, 1038.  Moreover, his chart

notes are replete with references to Jensen's impairments, including headaches, neck and back pain, anxiety, and PTSD. Tr. 1038, 1043. In addition, the record contains ample evidence of Jensen's mental impairments. *See, e.g.*, Tr. 378-82, 950-53, 1013, 1047-48, 1073, 1085-87, 1147-52, 1368, 1383. While the ALJ need not accept Dr. Hamp's ultimate disability determination, he was required to address Dr. Hamp's opinion and provide legally sufficient reasons for rejecting it. *See Long v. Astrue*, 2012 WL 1698082, *6-7 (D. Or. May 14, 2012) (ALJ improperly rejected a treating doctor's opinion by failing to discuss it). The ALJ erred by failing to do so.

### B.    Dr. Brown

On June 23, 2003, Bart Forthingham, M.D., who began treating Jensen for physical impairments arising out of her April 2003 on-the-job injury, opined that he "would not be able to from a medical standpoint, take her off work." Tr. 747. Dr. Forthingham went on to state that Jensen "could still work at a maximal lifting of 20 pounds, frequently lifting 10 pounds full time, but has limited work above head level." *Id.* After receiving this assessment, Jensen "expressed a desire to seek treatment with another physician [because] she feels that she needs to be off work." Tr. 748. Accordingly, on June 24, 2003, Jensen began seeing Dr. Brown for her allegedly disabling physical conditions. Tr. 748, 1116.

On July 31, 2003, Dr. Brown limited Jensen to sedentary activities. Tr. 1115. In explaining his work restriction, Dr. Brown stated that he "did not think that specifically what Dr. Forthingham is saying is wrong," but had "just a difference of opinion." *Id.* In October 2003, Dr. Brown changed Jensen's workplace restriction "to light work," but with "no significant lifting, no repetitive turning and twisting of her head, [or] pushing or pulling." Tr. 1111. Further, in June 2005, Dr. Brown informed Jensen that the x-rays revealed nothing physically wrong with her, suggesting that his prior

workplace restrictions were no longer accurate.  Tr. 1093.  Accordingly, he "recommended that she take the neck collar and sling off [that she wore to the exam]" and noted that "overall things appear to be slowly getting better."  *Id.*

In his decision, the ALJ fully credited Dr. Forthingham's opinion and, although not addressing Dr. Brown's opinion, determined that Jensen was capable of light work.  Tr. 17.  By doing so, the ALJ necessarily incorporated Dr. Brown's conclusions into Jensen's RFC.  Thus, while the ALJ's failure to address Dr. Brown's decision may have been erroneous, it was harmless error.  Where, as here, the ALJ incorporates a doctor's opinion into the RFC, there is no conflict in the medical record to resolve.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) ("the ALJ did not need to provide 'clear and convincing reasons' for rejecting Dr. Koogler's report because the ALJ did not reject any of Dr. Koogler's conclusions").

### C.     Dr. Spector

Jensen began treatment with Dr. Jay Spector in August 2007.[4]  Between August 2007 and April 2008, Dr. Spector saw Jensen four times to address and treat her physical impairments "for social security disability."  Tr. 1347.  In January 2008, Dr. Spector informed Jensen that she needed to start seeing "another doctor."  Tr. 1348.  Yet in April 2008, Dr. Spector stated that, based on Jensen's diagnoses of "chronic pain, asthma, and anxiety . . . I do not believe that she is able to be gainfully employed at this time."  Tr. 1362.

As the ALJ noted, Dr. Spector's opinion is inconsistent with several other treating, examining, and non-examining doctors.  Tr. 18; *compare* Tr. 1361-62 (Dr. Spector's assessment), *with* 747-48 (Dr. Forthingham's assessment), 955-62 (state-agency physical RFC assessment), 1155

---

[4] Jensen also received treatment once from Dr. Spector in 2005.  Tr. 1198-99.

12 - OPINION AND ORDER

(Dr. Keene's assessment), *and* 1093, 1111, 1114 (Dr. Brown's assessments). Thus, the ALJ needed only to provide specific and legitimate, rather than clear and convincing, reasons to reject it. *Bayliss*, 427 F.3d at 1216; *see also Lester*, 81 F.3d at 830.

The ALJ rejected Dr. Spector's opinion because "it is quite conclusory" and inconsistent with his own treatment records, as well as the other medical evidence. Tr. 18. The ALJ is not required to accept an opinion that is brief, conclusory, or not supported by clinical findings. *See Bayliss*, 427 F.3d at 1216. The ALJ is correct that Dr. Spector's report does not contain or refer to any clinical evidence. Tr. 1361-62. Furthermore, his chart notes do not contain or refer to any clinical findings, and do not indicate that Dr. Spector reviewed or considered any objective medical evidence in making his assessment. In fact, Dr. Spector's chart notes appear to be based solely on Jensen's subjective statements which, as noted by Dr. Christensen, tend to be over-elaborative. *See* Tr. 1347-48 (noting complaints of back, neck, and arm pain), 1356 (noting reports of memory problems, headaches, numbness in her legs, and diarrhea), 1357 (noting complaints of bloody stool).

In other words, Dr. Spector determined that Jensen was totally disabled, despite the fact that his treatment notes do not reflect any functional limitations. Moreover, as discussed above, there is minimal objective evidence of Jensen's alleged physical impairments in the record. *See, e.g.*, Tr. 843-47, 1093, 1095-96, 1103, 1123, 1279-82, 1287-88. Accordingly, the ALJ provided a legally sufficient reason, supported by substantial evidence, to discredit Dr. Spector's opinion that Jensen was unable to work.

///

///

///

13 - OPINION AND ORDER

## IV.    RFC Assessment

Finally, Jensen asserts, in relevant part,[5] that the ALJ failed to account in the RFC for any of her mental impairments, as well as for the restrictions set forth in Dr. Hamp's opinion. As a result, Jensen argues that the ALJ's step four finding was invalid.

The RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe. SSR 96-8p, 1996 WL 374184 (July 2, 1996); *see also Robbins*, 466 F.3d at 883. The ALJ's RFC must incorporate limitations found on the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

As discussed above, the ALJ did not provide a legally sufficient reason for rejecting Dr. Hamp's opinion. In addition, there is abundant evidence in the record regarding Jensen's mental impairments, which indicates that she suffered from frequent panic attacks, trouble sleeping, memory problems, and difficulty focusing and interacting with others. *See, e.g.*, Tr. 378-82, 950-53, 1013, 1037-38, 1047-48, 1073, 1086-87, 1147-52, 1368, 1383. Yet the ALJ failed to consider, let alone account for, any of Jensen's psychological conditions in formulating the RFC. *See Harrison v. Astrue*, 2011 WL 2619504, *7 (D. Or. July 1, 2011) ("omissions at step two are harmless [only] if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two," citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)). This is especially troublesome because the ALJ expressly determined that Jensen suffered from a severe mental impairment at step two, but concluded at step four that Jensen could return to her past relevant work based on an RFC with no

---

[5] Jensen also contends that the RFC determination was improper because the ALJ omitted her credible testimony, , as well as the opinions of Drs. Spector and Brown. As discussed above, the ALJ did not improperly assess such evidence. Accordingly, Jensen is unable to demonstrate that the RFC was incomplete or invalid for those reasons. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *Bayliss*, 427 F.3d at 1217.

mental limitations. Tr. 13-21. The ALJ also failed to address RFC assessments prepared by two state agency reviewing psychologists, each of whom determined that Jensen had moderate limitations in several important functional area. Tr. 967-83, 1156-57. Because the RFC does not account for these potential additional limitations, the RFC assessment is erroneous. Likewise, the ALJ's step four finding also is erroneous.

After finding that the ALJ erred, this Court has the discretion to remand for further proceedings or for the immediate payment of benefits. *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009); *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

While the ALJ failed to articulate a legally sufficient reason for rejecting the opinion of Dr. Hamp and to account for any mental limitations in the RFC, it is unclear whether a finding of disability would be required on the current record. Specifically, there is no testimony from the VE as to whether a hypothetical individual with Jensen's mental impairments would be precluded from sustained employment. Tr. 51-53. Jensen's attorney did ask the VE whether a hypothetical individual with several marked limitations would be precluded from substantial gainful employment. Tr. 52. As such, the VE's response is not dispositive. Thus, the evidence does not "clearly indicate the proper outcomes of steps four and five of the disability determination evaluation." *Vasquez*, 572 F.3d at 597.

Therefore, this case is remanded for further proceedings in order to reassess the limitations imposed by Jensen's well-documented mental impairments and Dr. Hamp's opinion. The ALJ

should then reconsider whether that evidence requires a new RFC and, if necessary, obtain additional

VE testimony in light of the new RFC evaluation.

### **ORDER**

For the reasons stated above, the Commissioner's decision is REVERSED and REMANDED

pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings.

DATED this 25th  day of September, 2012.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge
